IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

JAMES RIVER INSURANCE COMPANY, an Ohio corporation,

    Plaintiff,

v.

DOORDASH, INC., a Delaware corporation;
CLIFF BIBEAU, an individual;
CHARLEENE GIBSON, an individual;
RAEON LOVING, an individual; and,
VOYAGER INDEMNITY INSURANCE COMPANY, a Georgia corporation,

    Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff, JAMES RIVER INSURANCE COMPANY ("JAMES RIVER"), by and through its attorneys, the law firm of Lambdin & Chaney, LLP, and for its Complaint for Declaratory Judgment, alleges as follows:

### INTRODUCTION

1. This action seeks a declaration that JAMES RIVER owes no coverage obligations under a commercial excess liability policy issued by JAMES RIVER to DoorDash, Inc. with respect to the defense costs and indemnification of the three Defendants in the matter entitled *Bibeau v. Loving, et al.*, District Court, Arapahoe County, State of Colorado, Case Number 2020CV30094 (hereinafter the "UNDERLYING ACTION") concerning an automobile accident.

2. A dispute has arisen as to whether the defense and indemnity of the three

Defendants in the UNDERLYING ACTION triggers the EXCESS POLICY and is within the scope of coverage of the EXCESS POLICY.

3.     JAMES RIVER thus brings this action for a declaration that no coverage is available under the EXCESS POLICY in connection with the UNDERLYING ACTION.

4.     JAMES RIVER further seeks a declaration binding Mr. Bibeau, Plaintiff in the UNDERLYING ACTION, by the Court's determination regarding coverage with respect to this matter.

## THE PARTIES

5.     At all relevant times herein, Plaintiff JAMES RIVER was a corporation organized under the laws of the State of Ohio whose principal place of business is located in Richmond, Virginia. JAMES RIVER is a wholly owned subsidiary of James River Group, Inc. The ultimate parent of James River Group, Inc. is James River Group Holdings, Ltd., a publicly traded company.  JAMES RIVER is an insurance company authorized to transact business in California and Colorado on a non-admitted basis as an Excess and Surplus Lines carrier.

6.     Plaintiff is informed, believes and thereon alleges that Defendant DoorDash, Inc. ("DOORDASH") is a Delaware corporation authorized to do business in the State of California and Colorado, with a principal business address at 303 2nd Street, South Tower, Suite 800, San Francisco, California 94107.

7.     Plaintiff is informed, believes and thereon alleges that Defendant Raeon Loving ("LOVING") is now, and has been at all times relevant hereto, a resident of the County of Denver, State of Colorado.

8. Plaintiff is informed, believes and thereon alleges that Defendant Charleene Gibson ("GIBSON") is now, and has been at all times relevant hereto, a resident of the County of Denver, State of Colorado.

9. Plaintiff is informed, believes and thereon alleges that Defendant Cliff Bibeau ("BIBEAU") is now, and has been at all times relevant hereto, a resident of the County of Denver, State of Colorado.

10. Plaintiff is informed, believes and thereon alleges that Defendant Voyager Indemnity Insurance Company ("VOYAGER") is a citizen of the State of Georgia whose principal place of business is located in Atlanta, Georgia. VOYAGER is an insurance company authorized to transact business in California and Colorado on a non-admitted basis.

## JURISDICTION AND VENUE

11. Declaratory relief is authorized and appropriate in this action pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and all necessary parties are before the Court.

12. An actual controversy exists between the parties, concerning the rights and obligations arising under a contract of insurance issued by JAMES RIVER to DOORDASH in California.

13. The controversy is justiciable in character, and the relief requested herein is necessary to declare the parties' contractual rights, duties, and obligations.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) on the basis of diversity of citizenship.

15. The Plaintiff is of diverse citizenship from the Defendants and the amount in controversy exceeds $75,000 in that the policy at issue provides a liability limit of $10,000,000 and Defendant BIBEAU claims medical expenses damages in excess of $1.8 million in the UNDERLYING ACTION.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as this District is the district where the Court has personal jurisdiction over all of the parties, the accident which is the subject of the UNDERLYING ACTION happened in Arapahoe County, Colorado, and the UNDERLYING ACTION is being litigated in Arapahoe County, Colorado.  This action relates to a claim for insurance benefits by DOORDASH whose principal place of business is located in California.

## THE UNDERLYING ACTION

17. On May 24, 2019, in Aurora, Colorado, BIBEAU was operating a motorcycle westbound on E. Hampden Avenue near the intersection with S. Uravan Street and LOVING was driving a Chevy Malibu eastbound on E. Hampden Avenue in the left turn lane.

18. LOVING was driving a Chevy Malibu that Defendant GIBSON had rented from Hertz.

19. BIBEAU alleges that he continued straight through the intersection on May 24, 2019 and LOVING turned left in front of BIBEAU, and both vehicles collided front to front (the "ACCIDENT").

20. BIBEAU alleges he suffered "Bodily injury" as a result of the ACCIDENT.

21. Prior to the ACCIDENT, LOVING had completed a DOORDASH delivery

using log-in credentials belonging to GIBSON, who was alleged by BIBEAU to be an authorized DOORDASH operator.

22. LOVING was not an authorized DOORDASH operator at the time of the ACCIDENT.

23. GIBSON was not in the vehicle at the time of the ACCIDENT.

24. At the time of the ACCIDENT, neither LOVING nor GIBSON had accepted a request for food delivery services through the DOORDASH application.

25. At the time of the ACCIDENT, neither LOVING nor GIBSON was en route to pick up food or en route to drop food off to a DOORDASH customer.

26. At the time of the ACCIDENT, DOORDASH had not authorized LOVING to use GIBSON's log-in credentials.

27. At the time of the ACCIDENT, DOORDASH did not know that LOVING was performing food delivery services through the DOORDASH application.

28. At the time of the ACCIDENT, DOORDASH had not authorized LOVING to act as its agent and did not hold LOVING out as an agent of DOORDASH.

29. At the time of the ACCIDENT, LOVING was not an employee or independent contractor of DOORDASH and was not authorized by DOORDASH to act on its behalf.

30. Payments for the delivery services performed by LOVING on the date of the ACCIDENT were made by DOORDASH to GIBSON, not to LOVING.

31. DOORDASH was not aware that GIBSON was sharing those payments with LOVING.

32. On September 16, 2020, BIBEAU filed a Complaint in the UNDERLYING ACTION in the District Court of Arapahoe County, State of Colorado, captioned *Cliff Bibeau v. Raeon Loving; Doordash, Inc.; and Charleene Gibson*, Case Number 2020CV30094. A true and correct copy of the operative pleading in the UNDERLYING ACTION is attached as Exhibit "A" and incorporated herein by this reference.

33. The Complaint in the UNDERLYING ACTION alleges that LOVING was logged into the DOORDASH application under GIBSON'S DOORDASH account (Exhibit "A", Second-Amended Complaint, ¶ 14).

34. The Complaint incorrectly alleges that LOVING was engaged in a delivery at the time of the accident. (Exhibit "A", ¶ 17).

35. BIBEAU alleges that he has incurred medical expenses of at least $1.8 million. (Exhibit "A", ¶ 25).

## THE EXCESS POLICY

36. JAMES RIVER issued to DOORDASH a Commercial Excess Liability Policy, bearing policy number 00072693-02 (the "EXCESS POLICY"), for the policy period July 1, 2018 to July 1, 2019. Relevant portions of the EXCESS POLICY, redacted to eliminate financial information, are attached as Exhibit "B" and incorporated herein by this reference.

37. The EXCESS POLICY is excess to the primary Fleet Auto Rental Insurance policy issued by VOYAGER to DOORDASH with a policy period of October 15, 2018 to December 30, 2019, bearing policy number FAR1200006 (the "PRIMARY POLICY"). A true and correct copy of the PRIMARY POLICY, redacted to eliminate

financial information, is attached as Exhibit "C" and incorporated herein by this reference.

38. The EXCESS POLICY provides a $10,000,000 per occurrence limit of liability excess of the $1,000,000 of the PRIMARY POLICY.

39. THE PRIMARY POLICY is subject to a $250,000 Deductible per accident and the EXCESS POLICY is endorsed to require a "corridor" deductible of $1,000,000 each occurrence, which reduces the limits of liability.

40. The EXCESS POLICY follows form to the PRIMARY POLICY, except where the provisions of the PRIMARY POLICY conflict with the provisions of the EXCESS POLICY, in which case the provisions of the EXCESS POLICY apply.

41. The insuring agreement of the EXCESS POLICY provides:

**SECTION I – EXCESS LIABILITY INSURANCE**
**INSURING AGREEMENT:**

We will pay those sums in excess of the scheduled "underlying insurance(s)" that you become legally obligated to pay as damages because of injury or property damage to which this insurance applies, provided that the damages would be covered by the scheduled "underlying insurance(s)", or would apply but for the exhaustion of the applicable Limits of Insurance.

This policy shall follow the terms, definitions, conditions and exclusions of the scheduled "underlying insurance(s)", subject to the policy period, policy limits, premiums and all other terms, definitions, conditions and exclusions of this policy. If any provisions of the scheduled "underlying insurance(s)" conflict with any provisions of this policy, the provisions of this policy will apply.

This policy will not in any event provide broader coverage than those provided by the scheduled "underlying insurance(s)".

The amount we will pay for damages shall not exceed the Limits of Insurance stated in **Item 4** of the Declarations.

42. The EXCESS POLICY defines "underlying insurance(s)" as the policy or policies listed in the Schedule of Underlying Insurance, which includes, *inter alia,* the

7

PRIMARY POLICY.

43. The insuring agreement of the PRIMARY POLICY provides:

> **SECTION I – EXCESS LIABILITY INSURANCE**
> **INSURING AGREEMENT:**
>
> We will pay all sums an *insured* legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a *covered auto* within the term of coverage.  We will also pay all sums an insured legally must pay as a covered pollution cost or expense to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of covered autos.  However, we will only pay for the covered pollution cost or expense if there is either bodily injury or property damage to which this insurance applies that is caused by the same accident.
>
> We have the right and duty to defend any *insured* against a suit asking for such damages or a covered pollution cost or expense.  However, we have no duty to defend any *insured* against a suit seeking damages for bodily injury or property damage or a covered pollution cost or expense to which this insurance does not apply.  We may investigate and settle any claim or suit as we consider appropriate.  Our duty to defend and/or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments, settlements or the litigation expenses.  Our duty to defend will immediately terminate when the Liability Coverage Limit of Insurance is exhausted by the payments set forth above. [Emphasis added]

44. The PRIMARY POLICY defines a "covered auto" as an auto that DOORDASH owns or an auto that DOORDASH does not own that is used in connection with DOORDASH's business.

45. The PRIMARY POLICY defines an "insured" as DOORDASH (specifically the "Named Insured", which is referred to as "You" throughout the policy) but only "for any 'covered auto'."

46. The PRIMARY POLICY defines "Term of coverage" as follows:

> **Term of coverage** means the time period during which coverage under this policy is effective.  For the **named insured,** the **term of coverage** begins on the effective date and ends on the expiration date shown on the Declarations.  For any **member**, the **term of coverage** begins at the time the **member** takes possession of or is issued the keys to a **covered**

8

**auto** and ends when the member relinquishes or returns the keys to the **covered auto** to the **named insured** and no longer has the care, custody or control of the covered auto.

47. The PRIMARY POLICY was endorsed with Form FARI0039E-0217, "Food Delivery Endorsement", which amended the commercial auto insurance policy. The Food Delivery Endorsement amended the description of "covered autos" to include "Any auto owned and being used by a food delivery operator."

48. The Chevy Malibu was not owned by either GIBSON or LOVING but was rented by GIBSON from Hertz.

49. The Food Delivery Endorsement defines an "insured" as "Food delivery operators," which is defined by the Food Delivery Endorsement as follows:

> **Food delivery operator** means:
>
> 1. A person or entity who has entered into a contract with the named insured to operate a covered auto to provide food delivery to customer(s) through the named insured's food delivery application; or
> 2. A person who has been hired, retained or contracted by an entity where such entity has a contract with the named insured to operate a covered auto or to provide food delivery to customer(s) through the named insured's food delivery application.

50. The Food Delivery Endorsement defines the term "Food delivery application" as "a mobile application used for a customer(s) to request food delivery from food delivery operators."

51. The Food Delivery Endorsement adds the following definition to "Term of coverage":

> For any **food delivery operator** the **term of coverage** begins at the time the **food delivery operator** accepts a food delivery request made through a **food delivery application** and begins operating a **covered auto** for food delivery. The **term of coverage** ends when the **food delivery operator** has completed the delivery request(s) made through the **food delivery application.**

52. At the time of the ACCIDENT, LOVING was not an "Insured" under either

9

the PRIMARY POLICY or the EXCESS POLICY because she was not a party to a contract with DOORDASH and therefore did not qualify as a "Food delivery operator."

53. Additionally, at the time of the ACCIDENT, LOVING had just completed a food delivery, had not accepted a new food delivery request through a food delivery application, and was not en route to pick up food or make a delivery to a DOORDASH customer.

54. At the time of the ACCIDENT, GIBSON was not an "Insured" under either the PRIMARY POLICY or the EXCESS POLICY because she had not accepted a food delivery request through a food delivery application and was not en route to pick up food or make a delivery to a DOORDASH customer on the day of the ACCIDENT.

55. At the time of the ACCIDENT, the term of coverage for any "Insured" had ended, and therefore neither the PRIMARY POLICY nor the EXCESS POLICY was in effect, because LOVING had just completed a food delivery, had not accepted a new food delivery request through a food delivery application, and was not en route to pick up food or make a delivery to a DOORDASH customer.

56. JAMES RIVER seeks a declaration from this Court that there is no coverage for the ACCIDENT, either for a defense or indemnity, pursuant to the PRIMARY POLICY and the EXCESS POLICY.

57. VOYAGER has been and is defending LOVING and DOORDASH under the PRIMARY POLICY subject to a reservation of rights.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

## (DECLARATORY RELIEF -- DUTY TO DEFEND as to Defendants DOORDASH, GIBSON, LOVING and VOYAGER)

58. Plaintiff repeats and realleges the allegations of paragraphs 1 through 57, inclusive of this Complaint as though fully set forth herein.

59. An actual, present and justiciable controversy has arisen and now exists between Plaintiff on the one hand and the Defendants on the other, concerning their respective rights, duties and obligations under the EXCESS POLICY, which follows form to the PRIMARY POLICY, with respect to the duty to defend.

60. In particular, JAMES RIVER contends that neither DOORDASH nor LOVING nor GIBSON qualify as an "insured" as defined by the PRIMARY POLICY.

61. The Chevy Malibu does not satisfy the definition of "covered auto", which must be established in order for DOORDASH to establish that it is an insured under the PRIMARY POLICY.

62. The Chevy Malibu must have been an auto *owned* and being used by a *food delivery operator* at the time of an automobile accident. A **Food delivery operator** is a person who has entered into a contract with DOORDASH to provide food delivery to customers through DOORDASH's food delivery application.

63. GIBSON was the only person who entered into a contract with DOORDASH to provide food deliveries.

64. Because LOVING had not entered into a contract with DOORDASH, she does not qualify as a **Food delivery operator**, and the Chevy Malibu was not being used by a **Food delivery operator** at the time of the ACCIDENT.

11

65. Although GIBSON qualifies as a **Food delivery operator,** she was not using the Chevy Malibu at the time of the ACCIDENT.

66. Because neither DOORDASH nor GIBSON nor LOVING qualify as an insured under the PRIMARY POLICY, and by its terms, the EXCESS POLICY, no coverage is available for these individuals and corporation for the UNDERLYING ACTION.

67. A person or entity seeking coverage must demonstrate that he or she is actually an insured under a policy before the general principles regarding the duty to defend apply. Because neither DOORDASH, LOVING or GIBSON can meet that burden, VOYAGER is not obligated to defend the Defendants in the UNDERLYING ACTION, and JAMES RIVER accordingly also is not required to defend the Defendants in the UNDERLYING ACTION, if JAMES RIVER's duty ever arose, which it has not.

68. Notwithstanding the above, the facts of the ACCIDENT do not satisfy the Insuring Agreement of the PRIMARY POLICY, because the ACCIDENT did not "result[] from the ownership, maintenance or use of a covered auto within the term of coverage."

69. At the time of the ACCIDENT, no **Food delivery operator** had accepted a request for food delivery services through the DOORDASH application, and no **Food delivery operator** was en route to pick up food or en route to deliver food to a DOORDASH customer.

70. Therefore, the ACCIDENT did not happen during the term of coverage under the PRIMARY POLICY or the EXCESS POLICY. Under those circumstances, JAMES RIVER has no duty to defend as the EXCESS POLICY follows form to the

PRIMARY POLICY, which also has no duty to defend.

71. JAMES RIVER is informed and believes and thereon alleges that additional terms, conditions, exclusions and endorsements of the PRIMARY POLICY, which are incorporated into the EXCESS POLICY, preclude coverage for the UNDERLYING ACTION as to DOORDASH, GIBSON and LOVING.

72. JAMES RIVER is informed and believes and thereon alleges that Defendants contend otherwise.

73. Therefore, a justiciable controversy presently exists between plaintiff and Defendants relating to whether JAMES RIVER (and VOYAGER) has a duty to defend anyone with regard to the UNDERLYING ACTION. A judicial declaration is necessary to determine the rights and obligations of the Parties under the PRIMARY POLICY and the EXCESS POLICY.

74. Plaintiff has been required to retain the services of its counsel herein and accordingly is entitled to an award of reasonable attorney's fees and costs in connection with this action.

## SECOND CLAIM FOR RELIEF

**(DECLARATORY RELIEF -- DUTY TO INDEMNIFY as to Defendants BIBEAU, DOORDASH, GIBSON, LOVING and VOYAGER)**

75. Plaintiff repeats and realleges the allegations of paragraphs 1 through 74, inclusive of this Complaint as though fully set forth herein.

76. An actual, present and justiciable controversy has arisen and now exists between Plaintiff on the one hand and the Defendants on the other, concerning their respective rights, duties and obligations under the EXCESS POLICY, which follows

from to the PRIMARY POLICY, with respect to the duty to indemnify judgments or settlements pertaining to the UNDERLYING ACTION.

77.     In particular, JAMES RIVER contends that neither DOORDASH nor LOVING nor GIBSON qualify as "insureds" and the facts of the ACCIDENT do not satisfy the Insuring Agreement of either the PRIMARY or the EXCESS POLICY for the reasons stated above.

78.     JAMES RIVER is informed and believes and thereon alleges that additional terms, conditions, exclusions and endorsements of the PRIMARY POLICY, which are incorporated into the EXCESS POLICY, preclude coverage for the UNDERLYING ACTION as to DOORDASH, GIBSON and LOVING.

79.     JAMES RIVER is informed and believes and thereon alleges that Defendants contend otherwise.

80.     Therefore, a justiciable controversy presently exists between plaintiff and Defendants relating to whether JAMES RIVER (and VOYAGER) has a duty to indemnify anyone with regard to the UNDERLYING ACTION. A judicial declaration is necessary to determine the rights and obligations of the Parties under the PRIMARY POLICY and the EXCESS POLICY.

81.     Plaintiff has been required to retain the services of its counsel herein and accordingly is entitled to an award of reasonable attorney's fees and costs in connection with this action.

## THIRD CLAIM FOR RELIEF

### (DECLARATORY RELIEF – as to CLIFF BIBEAU)

82.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 81,

inclusive of this Complaint as though fully set forth herein.

83.     An actual, present and justiciable controversy has arisen and now exists between JAMES RIVER, on the one hand, and Mr. BIBEAU, on the other, in that if Mr. BIBEAU were to obtain a judgment or settlement against any of the Defendants in the UNDERLYING ACTION and that judgment becomes final and non-appealable, Mr. BIBEAU would potentially have a right of direct action against JAMES RIVER.

84.     JAMES RIVER is therefore entitled to declaratory relief binding Mr. BIBEAU to the court's coverage determination in this action.  JAMES RIVER is informed and believes that Mr. BIBEAU contends otherwise.

85.     JAMES RIVER is informed and believes and thereon alleges that the EXCESS POLICY, and by the terms thereof, the PRIMARY POLICY, provides additional terms, conditions, exclusions and endorsements applicable to Mr. BIBEAU.

86.     JAMES RIVER reserves the right to amend its Complaint to apply such terms, conditions, exclusions and endorsements as additional facts are discovered.

87.     A judicial declaration is necessary to determine the rights and obligations of the Parties under the PRIMARY POLICY and the EXCESS POLICY.

## PRAYERS FOR RELIEF

Plaintiff JAMES RIVER seeks relief as follows:

**ON THE FIRST CAUSE OF ACTION**

For a declaration of the rights and duties of the Parties as to coverage under the PRIMARY POLICY and the EXCESS POLICY, and in particular:

- that the Chevy Malibu does not qualify as a "covered 'auto;'"
- that DOORDASH, GIBSON and LOVING do not qualify as "Insureds" under the PRIMARY POLICY and EXCESS POLICY;

- that the ACCIDENT did not "result[] from the ownership, maintenance or use of a covered auto within the term of coverage;" and,
- therefore there is no potential for coverage and no duty to defend anyone with regard to the UNDERLYING ACTION.

**ON THE SECOND CAUSE OF ACTION**

For a declaration of the rights and duties of the Parties as to coverage under the PRIMARY POLICY and the EXCESS POLICY, and in particular:

- that the Chevy Malibu does not qualify as a "covered 'auto;'"
- that DOORDASH, GIBSON and LOVING do not qualify as "Insureds" under the PRIMARY POLICY and EXCESS POLICY;
- that the ACCIDENT did not "result[] from the ownership, maintenance or use of a covered auto within the term of coverage;" and,
- therefore, there is no potential for coverage and no duty to indemnify anyone with regard to the UNDERLYING ACTION.

**ON THE THIRD CAUSE OF ACTION**

For a declaration that any Defendant seeking coverage under the EXCESS POLICY and/or PRIMARY POLICY, including Mr. BIBEAU, should be bound by the determination of this Court.

**ON ALL CAUSES OF ACTION**

- For reasonable attorney's fees and costs in connection with this action;
- For costs of suit; and
- For such other and further relief as the Court may deem just and proper.

WHEREFORE, Plaintiff James River Insurance Company requests a determination of the rights, legal status, and/or other legal relations of the Parties pursuant to the above

law, facts, and policy language, and for all other good and valuable relief to which Plaintiff may be entitled, and for which the Court deems just and proper under the circumstances.

**PLAINTIFF DEMANDS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

DATED this 7th day of May, 2021.

s/    Melissa A. Wiese
L. Kathleen Chaney, Esq.
Melissa A. Wiese, Esq.
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net; mwiese@lclaw.net
*Attorneys for Plaintiff James River Ins. Co.*

Plaintiff's Address:
6641 West Broad Street, Suite 300
Richmond, VA 23230